SPEED OIL COMPANY *v.* DRAPER-OWENS
COMPANY *et al.*

No. 11648. February 10, 1937.

*Everett & Everett* and *Carl N. Davie,* for plaintiff.

*McElreath, Scott, Duckworth & DuVall, Ralph H. Pharr, Noah J. Stone,* and *Walter Earle Daley,* for defendants.

Russell, Chief Justice. On September 8, 1936, Speed Oil Company filed its petition for injunction against Draper-Owens Company, a corporation, James I. Lowry, sheriff of Fulton County, and J. M. George, marshal of the municipal court of Atlanta, and alleged as follows: Draper-Owens Company represented certain individuals termed the Brotherton Estate, and others termed the Hill Estate, the names, identity, and residences of the individuals composing both estates being unknown to the plaintiff. In August, 1934, Draper-Owens Company, as agents, were in charge of realty in the city of Atlanta, at 363 Whitehall Street, said to be owned by Brotherton Estate, and at 798 Ponce de Leon Avenue, said to be owned by the Hill Estate, both of which properties were being operated by J. W. Gillespie as gasoline-filling stations. Draper-Owens Company and Gillespie interviewed H. H. Hardin of Monroe County, a wholesale dealer in petroleum products, now president of the plaintiff, in an effort to obtain a new tenant for these and other properties. Said company and Gillespie sought to lease said properties to Hardin as an individual, but Hardin refused to enter into any agreement relative thereto, stating that he would form a corporation with $1000 capital stock, and have the corporation take over these properties and operate filling-stations thereon, and would buy certain assets of Gillespie located thereon, if an agreement as to the value of such assets of Gillespie could be effected, the corporation to be tenants at will and to pay $150 a month rent for the Whitehall Street property and $175 a month rent for the Ponce de Leon Avenue property. The foregoing "discussion" was had with B. F. White and F. C. Owens representing the Draper-Owens Company. White told Hardin that this proposition was not acceptable to him, but he would take it up with his principals; and thereafter Hardin

was advised that the proposition made by him was agreeable. Based on this agreement, the plaintiff corporation was organized and duly chartered by order of the superior court of Monroe County, and immediately began business as such. In furtherance of this agreement Gillespie was paid, and the plaintiff went into possession of the above properties and ever since has continued to operate them as filling-stations, complying with all agreements made relative thereto. After it took possession the plaintiff was directed to pay the rent for the Ponce de Leon Avenue property to Sharp & Boylston, real-estate agents in Atlanta. Plaintiff has "paid or tendered" to Draper-Owens Company and to Sharp & Boylston monthly rent of $150 and $175 on each property respectively. As to the Whitehall Street property, Draper-Owens Company accepted the $150 monthly rent up to and including April, 1936, but thereafter refused to accept payments in that amount tendered, stating that their principals claimed an additional amount monthly, which should have been paid beginning in January, 1936. As to the Ponce de Leon Avenue property the monthly rent was paid to Sharp & Boylston up to and including July, 1936; and after August 12, 1936, they declined to accept further payments, because the principals demanded a higher rent. The tenders so offered "have been and are continuing."

On July 8, 1936, sheriff Lowry levied on the plaintiff's property located at 798 Ponce de Leon Avenue, 363 Whitehall Street, and 906 Peachtree Street, under a distress warrant issued from the municipal court of Atlanta on July 2, 1936, and returnable to the September term of Fulton superior court. The plaintiff says that this levy was and is illegal and void, because it was authorized by J. F. Westbrook, deputy clerk of said municipal court, based on an affidavit purporting to have been made by Walter E. Daley, when in fact no such affidavit was made by him, because in such proceeding it is alleged that one W. E. Daley represented, among numerous others, William M. Brotherton, and on information and belief the plaintiff says that William M. Brotherton is not now, and was not on July 2, 1936, in life; and because, in addition to the foregoing, said proceedings were and are without warrant or authority, the plaintiff having made no contract with either of the individuals named in the affidavit, in reference to any lease, all contracts having been made, as stated above, with Draper-Owens

Company. Plaintiff filed, in the clerk's office of this court, defenses to said illegal levies. On August 17, 1936, another distress warrant was sworn out in the municipal court by Noah J. Stone, representing himself to be attorney for the so-called Hill Estate, and levy was made on the plaintiff's property at 798 Ponce de Leon Avenue; and plaintiff offered a forthcoming bond, which George, as marshal of the municipal court, while not objecting to the solvency of the surety, refused to accept, on the ground that an eventual condemnation-money bond also was required. "The plaintiff refused to give such an eventual condemnation-money bond." On August 21, 1936, the plaintiff filed in the superior court its petition for mandamus and injunction, which was sanctioned, and a temporary restraining order was granted, enjoining said marshal from making a levy under the distress proceedings. However, he levied the warrant on said date. The title to the properties of which the plaintiff is in possession, on Whitehall and Peachtree Streets and on Ponce de Leon Avenue, is not in plaintiff, but they are being operated by it "in the hope that it may recover its equity therein." In addition to the above legal proceedings, none of which have been adjudicated, counsel for the Brotherton Estate and the Hill Estate have threatened to file additional distress proceedings and a petition asking for a receiver, and other proceedings which would destroy the plaintiff and "wipe out its equity in all its holdings, and result in irreparable damages." It has no adequate remedy at law. In order to prevent multiplicity of suits, a court of equity should intervene and require all the proceedings referred to above to be "consolidated and tried together; and all persons interested should be required to intervene in this case and set up and assert whatever rights, if any, they have against the plaintiff or in and to the subject-matter of this suit." The plaintiff prays that the sheriff and his agents and deputies be restrained, temporarily and permanently, from advertising and selling or offering for sale the properties referred to herein; that the marshal of the municipal court be likewise restrained; that all the proceedings referred to above be consolidated herewith and tried together; that the court grant an order requiring all persons having any claims against the plaintiff, concerning the subject-matter of this suit, to intervene and set up herein whatever rights and claims they may have in the premises; that the attorneys for the

so-called estates be served with a copy of this petition and of the order of this court, that they be enjoined, temporarily and permanently, from further proceeding with the litigation referred to, that the suits already instituted by them be consolidated herewith, that these attorneys be likewise enjoined from instituting any further legal proceedings with reference to the subject-matter hereof or against the plaintiff; and that the plaintiff have such other and further relief as to the court may seem meet and proper under the facts.

On September 8, 1936, a temporary order as prayed for was entered by the court. On September 22, 1936, when the case came on for hearing, on motion made by Walter E. Daley, an attorney, alleged to represent the Brotherton Estate, "not in behalf of any client, but in behalf of himself, to dismiss the petition," which motion was concurred in by Noah J. Stone, who at the time stated that he represented the marshal of the municipal court, there being "no appearances at said hearing, . . by either the defendant Draper-Owens Company or by the defendant James I. Lowry, sheriff," and counsel for the plaintiff having read the petition and offered to submit affidavits and proof as to the facts alleged therein, the judge heard arguments on the motion to dismiss the petition for want of equity, refused to permit counsel for plaintiff to submit proofs in support of the same, and thereupon ruled and entered the following order: "The within matter being called, it is upon motion dismissed for want of equity." To this ruling the plaintiff excepted. This order is notable for its brevity, and we think it was a correct adjudication. Neither of the owners of the respective pieces of realty was a party to this case. It appears from the petition that the plaintiff refused to execute an eventual condemnation-money bond which was required by the marshal of the municipal court. "The party distrained may in all cases replevy the property so distrained, by making oath that the sum or some part thereof distrained for is not due, and giving security for the eventual condemnation-money; and in such case the levying officer shall return the same to the court having cognizance thereof, which shall be tried by a jury as provided for in the trial of claims: Provided, that when the levying officer shall retain possession of the property of the tenant levied on, it shall not be necessary to give the bond for the eventual con-

demnation-money." Code, § 61-404. It does not appear from the petition that the levying officer retained possession of the property levied on, but that the tenant positively refused to execute such eventual condemnation-money bond, and tendered to the officer in lieu thereof a forthcoming bond. See § 61-405, where it is provided that "In all cases where property shall be levied on under distress warrant for rent and the tenant shall desire the possession of such property, it shall be the duty of the sheriff or other levying officer to take a bond with good security for a sum equal to double the value of the property levied on, to be estimated by the levying officer, for the delivery of such property at the time and place of sale, provided the property so levied on shall be found subject to such rent: Provided, that it shall not be lawful to require or take a forthcoming bond for real estate. *This is in addition to replevy bond required in such cases, as is now provided by law."* This section was codified from the act of 1920 (Ga. L. 1920, p. 147), which further provided that "If the tenant shall file a counter-affidavit to said distress warrant requiring the giving of a replevy bond as provided by law, the levying officer may accept the same security on both bonds." Code, § 61-406.

It is curious for us to imagine what it was that the plaintiff could have bound itself to produce at the time fixed for the sale. It was certainly not the landlord; it was the tenant. It had no title to or interest in the real estate, and the property it claims is prospective profits anticipated to be derivable in the increased rental value of the premises which it said were rented to it. The president of the plaintiff, as appears from its allegations, merely had a "discussion" with real-estate agents, and perhaps others, as to the conditions under which it would rent the real estate. But one outstanding sine qua non was, that, when the corporation was formed and entered upon possession, the tenancy was to be only as a tenant at will. In these circumstances the tenancy was to last only as long as the tenant wished to stay in the premises; and it is inferable from the allegations of the petition that the agents of both the landlords, whoever they may be, refused to accept the rent or tenders of the rent, that the real owners had raised the rent on both pieces of property rented on the very terms specified by the plaintiff, which objected to paying a greater amount. In other words, the speculation of the plaintiff failed to

be effective, by reason of its own provision that it would be only a tenant at will. Under the allegations of the petition, there is no conceivable principle of equity that will enter into the decision of this case. For rulings upon the principles involved in this case see *Lovell* v. *Federal Land Bank,* 178 *Ga.* 578 (173 S. E. 390); *Botatoles* v. *Hill,* 180 *Ga.* 739 (180 S. E. 491); *Whitson* v. *Atlanta,* 177 *Ga.* 666 (170 S. E. 880); *Napier* v. *Varner,* 149 *Ga.* 586 (101 S. E. 580), and cit. The judge properly dismissed the petition.      *Judgment affirmed. All the Justices concur.*