## GAVAN *v.* NORCROSS.

1. In a suit by a tenant against a landlord for damages to a stock of goods, caused by a failure to repair a roof destroyed by fire, it should appear that the damage was done after the time when the landlord by proper diligence could have covered the building.

2. If after the destruction of a roof the landlord promises to repair, and tells the tenant "that it is not necessary to move on account of the fire," this latter statement relates to the safety of the building, and is not a guaranty that the goods will not be damaged by rain; or, if so, is void for want of consideration, and does not relieve the tenant of the obligation to exercise ordinary care to protect his goods against manifest danger from the elements.

.3. An allegation that the roof and other portions of the building were destroyed by fire, and that shortly thereafter a part of the building collapsed and fell,

and the owner began tearing down the same to rebuild a new structure, will be construed as equivalent to an allegation that the building had been totally destroyed by fire —particularly when, after a special demurrer, no amendment is offered averring that it was unnecessarily torn down, or that it could have been restored without undue cost.

4. Where no right to the land passes, except such as is required to sustain the building, and the lease is only of a storeroom, the destruction of the building containing the apartment terminates the tenant's interest in the land, and the tenant has no right to damages on account of the landlord's refusal to permit him to occupy a similar apartment in a new structure erected on the same land.

5. A provision that in case the property was destroyed or rendered untenantable the rent should cease until the same was repaired was in aid of the tenant, and to relieve him of the obligation to pay rent after the destruction of the premises, or during the time they were untenantable. It did not bind the landlord to rebuild in case the building was totally destroyed.

6. If, after the contract was terminated by the destruction of the building, the landlord gave the tenant notice that his rights as tenant were forfeited because of failure to pay rent for two months, the landlord did not thereby waive the tenant's loss of interest in the land resulting from a destruction of the structure.

Argued January 15,—Decided March 13, 1903.

Complaint for damages.     Before Judge Reid.     City court of Atlanta.     March 14, 1902.

The action was dismissed upon demurrer on the ground that the allegations did not authorize the plaintiff to recover. It appears that on June 23, 1893, the parties entered into a contract whereby the plaintiff rented of the defendant a storeroom at number 14 Peachtree street, in the Norcross building in Atlanta, for a term beginning on July 1, 1893, and ending on October 31, 1895, at $80 per month. It was agreed "that if said property shall be destroyed, or so damaged by fire as to become untenable, then the rental hereinbefore named shall cease from the date of such fire till the same shall be repaired." The plaintiff took possession of the room and used it for storing and selling books, etc. On January 9, 1894, the Norcross building caught fire, the roof and other parts were destroyed, and the building greatly damaged. The defendant represented to the plaintiff that he would at once repair the building, and especially the roof and other parts immediately over the rented room; and that it would not be necessary for the plaintiff to remove from the premises on account of the fire. Relying on said representation, the plaintiff continued his occupancy of the room, and did all in his power to protect his stock from damage by reason of the exposed condition of the building. The defendant did not ex-

ercise such diligence in repairing the roof and protecting the plaintiff's stock as the situation and circumstances demanded, but delayed in undertaking such repairs, and negligently left said room exposed to the elements for about ten days; in consequence whereof, and without any fault on the part of the plaintiff, his goods in the room were injured, wetted, and spoiled by heavy rains, against which the defendant left the room entirely unguarded and unprotected. About February 3, 1894, a part of the Norcross building collapsed and fell, and soon thereafter the defendant began tearing it down in order to replace it by a new building; and about the first of March, 1894, the plaintiff vacated the room on the request of the defendant. On or before November 1, 1894, the room at number 14 Peachtree street in the new Norcross building was ready for occupancy, and theretofore on several occasions the plaintiff notified the defendant that he expected to occupy said room in the new building until the expiration of his lease; but the defendant leased the room to other persons, who took possession of it before November 1, 1894, and have ever since occupied it as tenants of the defendant. The plaintiff was compelled to seek for another place for his business; but he was unable to find any place as well suited therefor as the room he had rented from the defendant, or any place that would at all do for the purpose at a rental of less than $125 per month. He therefore leased a room at number 41 Peachtree street, at that rental, for three years from November 1, 1894. He lays the amounts of the several items of damages claimed.

By amendment it was alleged that on April 26, 1894, the defendant served on the plaintiff a written notice of intention to cancel the lease for failure to pay the sum of $160 due on February 1, 1894. It is true that the plaintiff did not pay the January and February rent, because from January 9 to the first of March, when he removed from the place, the room was untenantable on account of the fire and the debris and obstructions on the sidewalk, and on account of the rain that ruined the store and his stock therein after the roof of the building had been burned off, and on account of the water thrown by the firemen. The plaintiff did not pay the January rent on the first day of that month, under a course of dealing, assented to by the defendant, whereby the plaintiff was allowed to pay the rent in two or three instalments during the month; and he was acting on this custom when the fire occurred.

*Anderson, Anderson & Thomas,* for plaintiff.

*Westmoreland Brothers,* for defendant.

LAMAR, J.    1. If the petition had alleged that with ordinary care the roof could have been repaired within a given time, and that after the expiration of the time within which it could have been put in position to protect the plaintiff's merchandise from the weather, and in spite of all that the plaintiff in the exercise of ordinary diligence could do to prevent the injury, his stock was damaged by the rain, a cause of action would have been stated.    But, so far as this petition shows, the rain may have fallen the day after the fire.    It does not appear when the damage was done—whether before or after a time when the roof could have afforded protection. The landlord is bound to repair.    Civil Code, § 3123.    But where a roof has been destroyed it can not be repaired instanter, and in the meantime the tenant must be diligent to protect his own goods. If this was impossible in the unroofed building, proper diligence would have required their removal elsewhere.    If the landlord was in any way liable for the causes making the removal necessary, then he could have been sued for the expense incident to the change, and it would have been better both for the landlord and the tenant that such a course should have been adopted, rather than to have left valuable merchandise in an uncovered building.

2. But plaintiff says that the landlord not only told him that he would at once repair, but that it was not necessary for him "to remove from the building on account of the fire."    This could only refer to the safety of the building, and not to the danger of damage to the goods by rain.    If the landlord had said in so many words, "While the roof has been burned off, I do not think it will rain; but if it does I will pay for the damage done," the promise would have been void for want of a consideration.    It would have been the equivalent of an insurance policy needing a premium to give it validity.    Nothing that defendant could say would justify a disregard of so patent and self-evident a fact as that rain was liable to fall and injure the books and other merchandise.    The plaintiff in the exercise of due care could not rely on anything to the contrary.    The landlord is bound to repair in due season, but the tenant is also bound to take proper steps to protect his property; and even if the landlord is negligent, or delays, the tenant must use ordinary care to lessen the damages.    Civil Code, § 3802.

3. While the building was not entirely consumed by fire, the petition alleges that the roof was destroyed, and in a short time thereafter " a part of the Norcross building collapsed and fell, and the defendant began tearing down the same, in order to replace it by a new building." The petition is to be construed most strongly against the plaintiff. It was to his interest to have clearly shown that while some parts of the structure may have been consumed, it had not lost its specific character as a building, and had not been totally destroyed as the result of the fire. A failure to aver that it was unnecessarily torn down, or that it could have been restored without undue cost, must mean that such allegations were purposely omitted; particularly when no amendment was offered after a demurrer on the ground that the petition showed that the building had been totally destroyed.

4. When the Code of 1863 was submitted for adoption, Judge Richard H. Clark, one of the codifiers, opposed the insertion of section 2274 (Civil Code, 1895, § 3135) which provides that "the destruction of a tenement by fire, or loss of possession by any casualty not caused by the landlord, or from defect of his title, shall not abate the rent contracted to be paid," and insisted, with the Civil lawyers that a man should not pay for what he could not enjoy. 7 Georgia Bar Asso. Rep. (1890), p. 156. Whether because of the technical rule that real estate was the principal thing, and rent issued out of the land regardless of the building; or because the tenant was during the term owner, and the loss should fall on him; or, since the loss must fall somewhere, there was no more reason that the landlord should bear it than the tenant; or because it was equitable that the tenant should lose the rent and the landlord the property; or because public policy required that the tenant, being in absolute control, should be diligent to protect the premises; or for the reason that the tenant could insure his term and thereby escape loss; or because, after the buildings had been destroyed, the landlord had no legal right to enter, but the land remained in the possession of the tenant, and might still be used and enjoyed by him for the balance of the term; or for all the reasons together, the legislature refused to omit this section, and left the law in Georgia as it is in England, and in most American States. He retains what is left, even though it may be practically useless, and he must pay rent therefor. But his right to retain

possession does not continue where no estate or interest in the land itself passes, but only rooms or apartments have been rented, and the structure containing them is destroyed. The land was not leased to him further than was necessary to sustain the walls. The interest of trade requires that the landlord should be free to build any kind of structure, instead of being bound to replace one like that destroyed, though it had proved to be too large or too small, or otherwise unsuited to existing conditions, and though the tenant's term was shortly to expire. Hence, where no interest in the land is conveyed, and the lease is of an apartment, a loss of the structure leaves nothing upon which possession under the contract can operate, and whatever incidental right in the land the tenant had terminates with the destruction of the building. *Alexander* v. *Dorsey*, 12 *Ga.* 12 ; Kerr *v.* Merchants Exchange, 3 Edw. Ch. (N. Y.) 322.

5. The plaintiff insists that even if the legal effect of the destruction of the building was to terminate the whole interest of the tenant in the land, the rule is to be disregarded, because it was expressly agreed, on the part of the defendant, "that if said property shall be destroyed, or so damaged by fire as to become untenable, then the rental hereinbefore named shall cease from the date of such fire till the same shall be repaired." He argues that if this clause did not bind the landlord to rebuild, it at least entitled plaintiff to the rights of tenant in the new building, if completed before the expiration of the term originally named in the rent contract. This might be so if an estate in land had been created. Rogers *v.* Snow, 118 Mass. 118. The word "repair" means to renew or to restore an existing thing — not to make a new one. A covenant to repair ordinarily does not bind the landlord to rebuild, though there are cases in which the word "repair," aided by the context, has been held to mean "rebuild." Where the contract requires the tenant to keep the premises in repair, and return them in the same condition as when received, or other language is employed showing an intention to make either party rebuild, such duty will be imposed, even though the word "rebuild" is not used. *Meyers* v. *Myrrell*, 57 *Ga.* 516. Usually, however, an agreement to repair would only include ordinary repairs. *Center* v. *Davis*, 39 *Ga.* 211 (2). And the provision of the Civil Code, § 3123, making landlords liable for repairs, does not require them

to rebuild in case of the destruction of the tenement.      *Mayer* v. *Morehead*, 106 *Ga.* 436.      And where the obligation to repair or rebuild is not imposed by law, but arises from contract, it must be by reason of an express agreement to that effect.      Doupe *v.* Genin, 45 N. Y. 119.      It will not be inferred even from a reservation of the right to enter for that purpose.      Gulliver *v.* Fowler, 64 Conn. 556.      The contract here is wholly wanting in anything indicating a promise by the landlord to repair or rebuild.      On the contrary, it is evident that the provision was inserted, not to compel the landlord to rebuild, but in aid of the tenant, and to relieve him of the obligation to pay rent if the premises were destroyed or became untenantable.      While the landlord had the option to rebuild, he did not expressly covenant so to do, and in view of the fact that a whole building had to be constructed in order to put one store in condition for occupancy, there is special reason for enforcing the rule that the agreement to rebuild will not be implied, but must be definitely and expressly stated.      The principle that the destruction of the building containing the storeroom terminates the interest in the land is so well founded in reason that to sustain a claim that a different result follows by reason of a contract, it ought to appear that such was the manifest intention of the parties.      If, then, there was no express or implied promise to rebuild, and if the destruction of the building containing the apartment terminated the tenant's interest in the land, it terminated it as a whole, including the provision for an additional two years after November 1, 1895.      When by operation of law the tenant's interest was thus at an end, the landlord could have left the land idle, or, at his leisure, erected a different character of building unsuited to the purposes of the tenant; or he had the right to construct one like that destroyed.      But, in absence of an election under the contract to repair, and of prompt notice and action thereunder, the plaintiff in either event would have no right as a tenant therein, because his right in the premises was lost when the building containing the apartment was destroyed by fire.

6. The plaintiff contended that the landlord himself recognized that the destruction of the building had not terminated the contract, inasmuch as he gave notice several months thereafter that the lease was forfeited because of the tenant's refusing to pay two months rent.      If, as we have shown, the tenant was not entitled

to recover damages to the stock caused by rain, he had no set-off against the rent which was due to January 9 ; and even if he owed nothing else, he was at least bound to pay what was due on that date.　But the fact that the landlord gave a wrong reason, or a good reason, for the forfeiture of the contract did not waive the legal effect of the destruction of the building containing the apartment.　There are cases where, in the course of dealings between the parties, if one gives a special explanation for acting, or refusing to act, in a particular manner, the courts will not allow an afterthought, or additional reason, when that first given proves to have been inadequate, and the other party has relied or acted thereon. *Fenn* v. *Ware*, 100 *Ga.* 566.　But here the lease was actually at an end.　To declare the lease forfeited as the result of a failure to pay rent was unnecessary, but it was only an additional reason given for the loss of all the tenant's rights in the new building. It did him no harm ; he was already out of the building ; he did not change his conduct or lose any of his rights by reason thereof. The facts do not give the plaintiff a cause of action ; and the judgment sustaining the demurrer is　　*Affirmed.　By five Justices.*