KANES *v.* KOUTRAS.

No. 16055. APRIL 16, 1948.

*Douglas, Evans & Cole* and *George Carroll,* for plaintiff.
*Richard T. Nesbitt,* for defendant.

ATKINSON, Justice. (After stating the foregoing facts.) The question, in an oral motion to dismiss, is not whether any particular allegation has been defectively pleaded, but whether the petition in its entirety fails to set out a cause of action. *Capps* v. *Edwards,* 130 *Ga.* 146 (1) (60 S. E. 455). It thus appears that an oral motion to dismiss is in the nature of a general demurrer and, since the passage of the Uniform Procedure Act, where a suit is filed in a superior court, which has general jurisdiction both in law and in equity, the petition should not be dismissed on general demurrer if it states a cause of action for either legal or equitable relief. *Pardue Medicine Co.* v. *Pardue,* 194 *Ga.* 516 (1) (22 S. E. 2d, 143).

"Equity will not enjoin the proceedings and processes of a court of law, unless there shall be some intervening equity or other proper defense of which the party, without fault on his part, can not avail himself at law." Code, § 55-103. The defendant in a distress warrant does not need the aid of a court of equity for the assertion of such defenses as, (a) that the tenant has been damaged by the failure of the landlord to make necessary repairs; or (b) that the tenant was forced to vacate because the building became untenantable. *Botatoles* v. *Hill*, 180 *Ga.* 739 (2) (180 S. E. 491); *Speed Oil Co.* v. *Draper-Owens Company*, 183 *Ga.* 788 (190 S. E. 22).

In the present case the petitioner, in addition to seeking to enjoin the distress-warrant proceeding, sought also to recover a money judgment for damages alleged to have resulted from the refusal of the landlord to make structural repairs required by the city. The facts of the case under review are somewhat similar to those involved in *Hanson* v. *Williams*, 170 *Ga.* 779 (154 S. E. 240), where the petition was held to set forth a cause of action. However, the case here presented does not involve affirmative equitable relief, as did the *Hanson* case, and subsequently to that decision the General Assembly passed the amendatory act of 1946 (Ga. L. 1946, pp. 287, 289), purporting to enlarge the jurisdiction of the Civil Court of Fulton County. Therefore, while the Civil Court of Fulton County would have had jurisdiction to determine whether the petitioner was entitled to recover a judgment for $21,900, yet since the superior court has concurrent jurisdiction with the Civil Court of Fulton County, the action should not have been dismissed if it stated a cause of action for any of the substantial relief prayed for. *Arteaga* v. *Arteaga*, 169 *Ga.* 595 (151 S. E. 5). It thus becomes necessary to determine whether the petition alleged a cause of action for legal relief.

Service was not perfected on the owner of the hotel, and for that reason he is not a party defendant. Therefore, for the purposes of this case the original lessee will be regarded as any other lessor.

In the early case of *Lewis & Co.* v. *Chisholm*, 68 *Ga.* 40, this court said: "The common law has always thrown the burden

of repairs on the tenant. Our statute changes this rule." See Code, § 61-111. In cases involving a tenant for years the statute is otherwise. § 85-805.

The lease under consideration contained among others the following stipulations: The building was to be used for "hotel and restaurant business." The lessee agreed to repair any damage to water or steam pipes caused by freezing, or any neglect on his part. The lessee was to make no changes of any nature in the premises without first obtaining the written consent of the lessor, and the lessor reserved the right to enter the premises, examine the same and make such repairs, additions, or alterations as might be deemed necessary for the safety, comfort, and preservation of the building. The lessee agreed to comply with all rules, orders, ordinances, and regulations of the city authorities. It was finally stipulated that the "lessee accepts property 'as is.' No repairs either to exterior or interior to be made by the lessor during the life of this lease." The bill of sale executed by the original lessee subletting the hotel building to the petitioner made no reference to repairs.

It is plain from the above stipulations that the intention of the parties was to relieve the original lessor from making ordinary repairs which, under the Code, § 61-111, he would otherwise have been required to make. However, in view of the further stipulations that the lessee was to make no changes of any nature in the premises without the consent of the lessor, and the reservation giving the lessor the right to enter the premises for the purpose of making such alterations as might be deemed necessary for the preservation of the building, was the agreement on the part of the lessee to accept the property "as is" sufficient to relieve the lessor from correcting structural defects when ordered by the city so to do?

Counsel for the plaintiff in error insist that the refusal of the lessor to make the repairs amounted to a constructive eviction of the lessee, and further that, where material alterations and structural changes are ordered by municipal authorities, these substantial changes in the building fall upon the landlord and not on the tenant, even though there is a provision in the lease that the lessee accepts the building "as is," and binds himself to

comply with all rules, regulations, and ordinances passed by a city government. In support of their insistence, they cite 52 C. J. S. 171, § 455; City of New York v. The U. S. Trust Co., 116 App. Div. 349 (101 N. Y. Supp. 574); Younger v. Campbell, 177 App. Div. 403 (163 N. Y. Supp. 609); Knapp v. Guerin, 144 Louisiana, 754 (81 So. 302). For a further discussion on the question of who, as between landlord and tenant, must make alterations ordered by public authorities, see 51 C. J. S. 1071, § 366; 32 Am. Jur. 211, § 229; Borden v. Hirsh, 249 Mass. 205 (143 N. E. 912), and annotation thereon in 33 A. L. R. 526, 530.

The city is not a party in the present case, and no question is before the court involving the right of government authorities to abate a nuisance. The controversy is between the original lessee and his subtenant. It is possible that the expense of making the thirteen structural repairs called for by the city would be so great as to cause the lessor to prefer to allow the building to remain idle rather than to be put to such expense. A landlord in many instances does not desire to make any repairs to a building either before he rents it to a tenant, or during the tenant's occupancy. This apparently was true in the present case, where in addition thereto the tenant was willing to accept the building under these circumstances and a stipulation to that effect was included in the lease contract. However, accepting a building "as is" does not necessarily mean that thereafter, if structural changes and material alterations are ordered so that a building will conform to an existing city ordinance, the tenant should be required to make these structural changes and material alterations. Especially would this be true where the lease was for a short term and where the expenditures necessary to make the building conform to the ordinance would exceed the value of the building. Certainly, under a reasonable construction, this was not what the parties contemplated by the insertion of the clause that the building was accepted "as is." Though in law each of the parties was charged with knowledge at the time the lease was executed that the building could be abated as a nuisance under the existing city ordinance, yet it is reasonable to conclude that, inasmuch as the lessor did not desire to go to any expense in making repairs, and as the lessee was willing to

take the building as it was, the parties as between themselves merely intended to take a chance that the city would not abate the building as a nuisance. In these circumstances, where both parties were not entirely free from fault, the lessor in leasing and the lessee in renting from him a building which under the city ordinance was an exisiting nuisance, it would be a great hardship on the lessor if he should be held to be liable for damages alleged to have resulted on account of his refusal to make the structural changes. On the other hand, it would be an even greater injustice, under the allegations of the petition, to require the lessee to continue paying rent while the lessor, because of the unusual hardship on him, was being relieved from liability for damages caused by his failure to make the repairs. The hotel building was not rendered untenantable by fire, and for this reason the Code, § 61-113, which declares that the destruction of a tenement by fire shall not abate the rent contracted to be paid, is not applicable. The allegation on this phase of the case is that all sums for rent were paid promptly when due up to September 1, 1947, the date the city revoked the license to operate a hotel in the building, at which time the lessee stopped paying the rent.

In the light of what has been said, the allegations of the petition setting forth the refusal of the lessor to make the structural repairs, together with the prohibition against using the building for hotel purposes and the revocation of the petitioner's license to operate a hotel therein, were sufficient to authorize the tenant to discontinue the payment of rent and thus to terminate the lease. Since the allegations of the petition show that the tenant elected thus to terminate the lease, both parties should be relieved from further liability under the contract. It follows that, under the allegations of the petition, the lessor should not be held liable for damages caused by his refusal to correct the thirteen structural defects.

All questions as to what the rights and liabilities of the parties would have been had the tenant elected to continue paying rent, or had he offered to make the alterations ordered by the city, are expressly left open.

Accordingly, the allegations of the petition instituted by the subtenant did not set forth a cause of action for damages claimed

as a result of the lessor's refusal to make the repairs. Nor do the allegations as to damages based upon the insistence that the refusal of the lessor to make the repairs caused the petitioner's leasehold right to become worthless require a different result. In the absence of any administrative ruling requiring the lessor to correct the defects, the operation of the hotel in question was a lawful enterprise at the time the original lease contract was entered into, and also at the time the original lessee conveyed his interest in the lease to the petitioner. See *Western & Atlantic Railroad Co.* v. *Atlanta,* 113 *Ga.* 537 (1) (38 S. E. 996, 54 L. R. A. 294). If a person desires to buy a leasehold right under the circumstances of this case, he necessarily takes the risk of having a city restrict the use of the property.

The instant case is distinguished by its facts from *Brunswick-Balke-Collender Co.* v. *Bailey,* 31 *Ga. App.* 704 (121 S. E. 705), where the elevation of a street by municipal authorities rendered the premises untenantable.

It follows that the petition failed to set forth a cause of action either in law or in equity, and the trial court did not err in dismissing the case on oral motion.

*Judgment affirmed. All the Justices concur. Duckworth, P. J., and Bell, J., concur in the judgment only.*