32055.   MIDTOWN CHAIN HOTELS COMPANY *v.*
BENDER.

724

DECIDED SEPTEMBER 15, 1948. REHEARING DENIED OCTOBER 2, 1948.

*Douglas, Evans & Cole, Hamilton Douglas Jr., Mitchell & Mitchell,* for plaintiff in error.

*Samuel L. Eplan, James Walter Mason,* contra.

PARKER, J. ■ Motion has been made to dismiss the writ of error because the bill of exceptions discloses that it was presented to the trial judge without notice to the defendant in error, or to his attorneys of record, that it would be so presented, as required by the Code (Ann. Supp.), § 6-908.1. This contention of the defendant in error is controlled adversely to him by the ruling in the recent case of *Ellis* v. *Gisi,* 77 *Ga. App.* 56 (1) (47 S. E. 2d, 825). See also *Barwick* v. *Wind,* 203 *Ga.* 827 (48 S. E. 2d, 523). The motion to dismiss is denied.

■ The controlling question presented is whether the defendant was obligated to do the work directed by the city to be done upon the premises involved, and is therefore liable to the plaintiff for the amount spent by it in doing said work. If the lease contract created the relation of landlord and tenant between the parties, and the tenant did not covenant otherwise, the plaintiff as the landlord can not recover because "the landlord must keep the premises in repair, and shall be liable for all substantial improvements placed upon them by his consent." Code, § 61-111. But if the contract created an estate for years, the defendant would be liable for "repairs or other expense necessary for the preservation and protection of the property." § 85-805. These Code sections control this case unless the lessee was bound to make the improvements under the covenants in the lease.

The plaintiff invokes the rule that a tenant's covenant to keep the rented premises in repair absolves the landlord from his statutory duties to make repairs, as stated in *Bell House* v. *Wilkins,* 34 *Ga. App.* 285 (129 S. E. 797). That rule, however, is subject to the further rule that a tenant will not be required to make repairs in addition to or beyond those expressly covenanted in the contract. "When the deed of lease points out the repairs which the lessee is to make, . . no additional duty of repairing or improving is cast upon the lessee by a stipulation in the same deed, that in no event is the lessor to be held bound or liable for, or chargeable with, any repairs or improvements, whatsoever, upon the premises." *Meyers* v. *Myrell,* 57 *Ga.* 517(3). As was said in that case, on page 520, it would be an unwarrant-

able expansion of the covenant to hold that repairs not covered by the lease were to be made by the tenant in addition to those for which he expressly stipulated. The lessee in this case agreed only to "keep in good order and repair all elevators, elevator machinery, and other machinery which may be part of the leased premises, and all heating and water heating, and electrical and lighting apparatus," and to "repair partitions, all glass and plate glass, elevators, electric and plumbing fixtures, and all machinery whatever in the leased premises." None of the structural changes required by the city include the repairs the lessee was obligated to make. Number 6 is the only one which relates in any way to the repairs for which the lessee was bound, and that requirement ordered the removal of wood partitions in store-rooms in basement and inclosing with metal lath and cement plaster. We do not think that this requirement was a "repair" which the lessee was obligated to make under the lease, or which was contemplated by the parties when the lease was made. "To repair is, to mend; to restore to a sound state whatever has been partially destroyed; to make good an existing thing; restoration after decay, injury, or partial destruction," and "an improvement is a valuable and useful addition, something more than a mere repair or restoration to the original condition." *Dougherty* v. *Taylor & Norton Co.*, 5 *Ga. App.* 773, 775 (63 S. E. 928).

"When the owner of real estate grants to another simply the right to possess and enjoy the use of such real estate, either for a fixed time or at the will of the grantor, and the tenant accepts the grant, the relation of landlord and tenant exists between them. In such case no estate passes out of the landlord, and the tenant has only a usufruct, which he may not convey except by the landlord's consent and which is not subject to levy and sale; and all renting or leasing of such real estate for a period of time less than five years shall be held to convey only the right to possess and enjoy such real estate, and to pass no estate out of the landlord, and to give only the usufruct, unless the contrary shall be agreed upon by parties to the contract and so stated therein." Code, § 61-101. An estate for years, when applied to realty, differs from the relation of landlord and tenant, in that in the latter the tenant has no estate, but a mere right of use very similar to the right of a hirer of personalty. § 85-802. The lease

agreement here involved is for a period of five years. Although there may be a presumption that a lease for five years or more conveys an estate for years (*Warehouses* v. *Wetherbee,* 203 *Ga.* 483, 46 S. E. 2d, 894), this fact alone does not conclusively show that an estate for years was created in the lessee in this case, and that the relation of landlord and tenant did not exist between the parties, although some of the decided cases seem to have so held. See *Collier* v. *Hyatt,* 110 *Ga.* 317 (35 S. E. 271); *Johnson* v. *Brice,* 151 *Ga.* 472 (107 S. E. 338); *Griffith* v. *Smith,* 155 *Ga.* 717 (118 S. E. 194); and the majority and dissenting opinions in *State of Ga.* v. *Davison,* 198 *Ga.* 27 (31 S. E. 2d, 225). "Whether under a contract providing for the rent of land an estate in the land passes to the tenant, or he obtains merely the usufruct and no estate in the land, depends upon the intention of the parties; and this is true without regard to the length of the term." *Hutcheson* v. *Hodnett,* 115 *Ga.* 990, 993 (42 S. E. 422).

The lease under consideration provides that the lessor may, upon the failure of the lessee to pay any sum due under the contract, or to comply with any of its terms or conditions, after 15 days' written notice delivered to the lessee, and without legal process, declare the lease to be at an end and may enter upon the premises and take possession thereof, forcibly or otherwise removing all persons and things therefrom; that the premises shall be used for hotel purposes, and for no other; that the lessee may not, without the prior written consent of the lessor, assign the lease or any interest thereunder, or sublet the premises or any part thereof, or permit the use of the premises by any party other than the lessee; that the lessor may declare the lease at an end if the lessee is adjudged to be a bankrupt, or if he applies for relief under any law of the United States relating to bankruptcy, or any relief under any State law relating to insolvency; that if the premises are totally destroyed or rendered untenantable by fire, storm, earthquake, or other casualty not caused by the negligence of the lessee, the lease shall be at an end, and that partial destruction abates the rent to the extent thereof; that the lessee shall not make any structural changes in the premises without the written consent of the lessor; that the rights conferred by the lease are subject to any bona fide mortgage or deed to secure debt, which is now or may be hereafter placed upon the leased

premises; and that in case of a bona fide sale of the leased premises the lessor may cancel the lease upon two months' written notice to the lessee.

These restrictions and limitations set out in the lease seem to us to compel the conclusion that the relation between the parties thereto was that of landlord and tenant. They outweigh any other provisions of the contract, including the five-year term, which may tend to show the creation of an estate for years. Upon a consideration of the quantity and quality of the lessee's rights under the lease, and the intention of the parties as gathered therefrom, our conclusion is that the lease should be construed as a contract of landlord and tenancy, under which the lessee had only a usufruct, and that it did not create an estate for years in the lessee. It follows that the duty of making the structural changes and improvements in the leased premises, whether they be regarded as "repairs" or as "substantial improvements," was upon the landlord and not upon the tenant. Code, § 61-111.

Other contentions of the plaintiff are that, if the action of the city precluded the lessee from operating the hotel, he would still be liable for the rent, and for repairs for structural improvements on the building; and that the lessee is estopped from denying his liability for improvements made to the property. The cases of *Lawrence* v. *White*, 131 *Ga.* 840 (63 S. E. 631, 19 L. R. A. (N. S.) 966, 15 Ann. Cas. 1097), *Goodrum Tobacco Co.* v. *Potts-Thompson Liquor Co.*, 133 *Ga.* 776 (66 S. E. 1081, 26 L. R. A. (N. S.) 498), *Potts-Thompson Liquor Co.* v. *Capitol City Tobacco Co.*, 137 *Ga.* 648 (74 S. E. 279), and *Smith* v. *Hanna Mfg. Co.*, 68 *Ga. App.* 475 (23 S. E. 2d, 552), are cited. We do not think that any of these cases, or others of similar import that could be cited, are contrary to the views we have expressed. In the instant case, the question is not one of rental, nor do the facts show an estoppel against the defendant. When the city ordered the improvements to be made on the property, and the lessee refused to make the improvements, the plaintiff proceeded to make them itself and is now endeavoring to hold the lessee for the costs of the improvements. We think it clear that neither of the parties contemplated the necessity of improvements of the character ordered by the city. While the lessor undertook to limit his liability for any repairs or improvements, except as to the

roof and the exterior of the building, and possibly the plumbing, the lessee also limited his liability by expressly stipulating what repairs would be made by him. We thus have a situation where improvements of a structural nature outside the contemplation of the parties became necessary, in the face of covenants by both parties as to just what repairs they would make. Under these circumstances, it would be more equitable and just to require of the landlord the making of substantial improvements which necessarily enhanced the value of the property. See *Kanes* v. *Koutras*, 203 *Ga.* 507 (47 S. E. 2d, 558). Many authorities cited in the annotation in 33 A. L. R., pages 532, 533, and 535, are to the effect that, where the alterations or improvements ordered by public authority are of a structural or substantial nature, the landlord, instead of the tenant, is ordinarily held to be liable where the tenant's covenant is merely to repair; and a covenant to make all necessary repairs does not apply to alterations made necessary by subsequent statutes, regulations, or changes in municipal policy; and that the landlord, and not the tenant, is responsible under a covenant by the tenant to comply with the requirements of public authorities, for alterations or improvements of a structural nature required by law or the order of a public authority. It seems to us that these general principles, well recognized by many courts, are applicable to this case.

The court did not err in sustaining the demurrer to the petition.

*Judgment affirmed. Sutton, C. J., and Felton, J., concur.*