32380. EVANS THEATRE CORPORATION *v.* DEGIVE INVESTMENT COMPANY.

DECIDED MARCH 18, 1949. REHEARING DENIED MARCH 31, 1949.

*Sutherland, Tuttle & Brennan, Herbert R. Elsas,* for plaintiff.

*Candler, Cox & McLain, Henry L. DeGive, Spalding, Sibley, Troutman & Kelley,* for defendant.

GARDNER, J. (a) Evans Theatre Corporation filed suit in Fulton Superior Court against DeGive Investment Company, seeking a declaratory judgment. From the petition the following material facts appear: On December 16, 1926, the defendant leased to Loews Grand Theater and the Grand Theater Office Building, for sixty years beginning January 1, 1927. Under said lease the owner of the estate for years agrees to repair, restore, and rebuild the property in the event of partial or total loss by fire, and to pay rent without abatement, and to pay all taxes, charges, assessments, liens, penalties, and claims for damages; to make all

repairs, and to return the premises at the end of said sixty years in good condition and repair without compensation for improvements placed on the premises. The owner of the estate for years is given the unrestricted right to possess, control, and use this property in any manner it sees fit for said term, and has the right to demolish any building on the land and erect such other buildings as it desires and to make any alterations, additions, or improvements thereto as it desires; and such owner of the estate for years may sell, assign, or mortgage its remainder estate. Said lease provides in section 7 that "the lessee is bound and hereby agrees to comply with all city ordinances and public laws applicable to said leased premises and not commit any nuisance thereon, and further agrees to save and hold harmless the owner from all costs, expenses, and liability on account thereof." On October 30, 1937, said lessee sold, conveyed, transferred, and assigned to the plaintiff its estate for years in these premises, together with its right, title, and interest in and to the said lease as modified. On October 7, 1947, written notice was given by the City of Atlanta to the plaintiff, "as the owner or person in possession, charge or control of improved property known at No. 153 Peachtree Street . . .," being the Grand Theater Office Building and the Grand Theater, that this constituted a "nuisance as defined by section 65-102 of the Code of the City of Atlanta of 1942," and said plaintiff was required to make certain designated structural changes and repairs, to "abate said nuisance and place said premises in a safe condition" before a named date. Under the lease and agreements between the plaintiff and the defendant, and the relationship thereby created, the plaintiff claimed that "it is the legal duty of the defendant to make such structural changes"; and the plaintiff notified the defendant thereof and called on it to make the same, and the defendant refused to do so and claims that the duty to make the same rests on the plaintiff itself. In order to avoid the threatened action by the city, the plaintiff is required to make such changes as will cost in excess of $40,000.

The petition was amended and put in two counts, and in the second count the plaintiff contended that under the Georgia Building Safety Laws (Code, Ann. Supp., § 92 A-701 et seq.), the

defendant as owner of said buildings was required to obtain a certificate of occupancy, and under this law and the agreements in effect between the plaintiff and the defendant and the relationship thereby created it is the legal duty of the defendant to make such structural changes and repairs, and the plaintiff has notified the defendant of its obligation under the said Georgia Building Safety Laws and to comply therewith, and the defendant has refused to do so and contends that it is the legal duty of the plaintiff to make these structural changes.

It is alleged that there exists an actual controversy between the plaintiff and the defendant as to which party is legally liable to comply with the ordinances of the City of Atlanta and the Georgia Building Safety Laws, and that the amount in controversy exceeds $40,000.

The plaintiff prayed for the court to take jurisdiction under the Georgia law authorizing declaratory judgments, and to adjudge as to the duty of complying with the requirements of the City of Atlanta and with the Georgia Building Safety Laws; and for the plaintiff to have judgment against the defendant for all sums expended by the plaintiff in complying with said City of Atlanta requirements, and with the Georgia Building Safety Laws.

The defendant demurred to the petition as amended, the trial judge sustained the demurrer and dismissed the petition, and the plaintiff excepts to this judgment.

It is contended by the defendant, and may be reasonably assumed, that the structural changes and repairs placed on said premises, in order to comply with the municipal and State safety and fire-prevention requirements and law, will inure to the benefit of the owner of the estate for years in this property for the ensuing forty years, and at the expiration of such estate such structural changes and repairs to the buildings thereon will have become worn and out of date. Practically no advantage to the lessor—the holder of the remainder fee—of any appreciable monetary value will inure from these improvements. It might be that, should the defendant be required to pay for these structural changes and repairs, the plaintiff would desire to demolish the structures entirely, which it could do under the lease. It appears that, during the estate for years, the owner of the estate for

years to all intents and purposes is the owner of the property, exercising all and every dominion over the same as any other owner, with only the duty to restore in good condition and repair at the end of the sixty years. In dealing with structural changes and repairs to meet building safety laws and fire-prevention laws, the owner of the estate for years in the present case is the owner, and is to be dealt with and considered as such.

It is our opinion that, under the provisions of section 7 of the lease that "The lessee is bound and hereby agrees to comply with all city ordinances and public laws applicable to said leased premises and not commit any nuisance thereon, and further agrees to save and hold harmless the owner from all costs, expenses and liability on account thereof," the plaintiff is required to comply with the demands of the City of Atlanta, if otherwise valid, relative to said leased premises, under the municipal building and fire-prevention ordinances, and to bear the costs and expense of making such structural changes and repairs as are necessary to meet such requirements, and abate the nuisance on said premises. Therefore it affirmatively appears from the petition as amended that the plaintiff and not the defendant is liable for the cost and expense of structural changes and repairs to buildings on said premises, to abate the nuisance thereon and meet the requirements of the city ordinances for safety and fire prevention. The same is true as to structural changes and repairs for the same purpose required under the Georgia Building Safety Law.

It appears from the lease, attached as an exhibit to the petition, that the owner of the estate for years, the plaintiff, has possession and absolute control of the premises for sixty years, or the remainder of the sixty years unexpired, and there are no restrictions on its use of the premises, save that they should be restored at the end thereof in good condition and repair, and it has the power to make such alterations, additions, and improvements as it desires and to demolish, if it desires, all buildings thereon, and also to mortgage, to sell and transfer its estate therein, and also to sublet all or portions thereof; and should there be a fire destroying the buildings, to receive the residue of any insurance after rebuilding and to contest payment of any taxes and assessments and to adjust same and to receive rebates thereof. The

owner of the estate for years is in absolute control, with certain contractual duties, all consonant with its ownership and unqualified possession of the premises, for the period of the estate for years. It appears, therefore, that it· was the intention of the makers of this lease, when the estate for years was created that the duty of compliance with all ordinances and public laws as to structural changes in the buildings on the premises, in order to meet the requirements of municipal and State laws as to safety and fire-prevention relative to buildings, was intended to be and was placed on the owner of the estate for years, the lessee. Moreover, in an estate for years of the nature involved, where the owner of such estate is to all intents and purposes the owner with unqualified possession, such improvements and repairs, necessary to preserve the buildings on the premises comprising such estate and prevent their decadence as well as prevent their condemnation and destruction as fire hazards and unsafe buildings, and as a nuisance, should be made by the lessee or owner of the estate for years, not only under the provisions of the lease, but under a proper construction and application of Code § 85-805, providing that "A tenant for years is bound for all repairs or other expense necessary for the preservation and protection of the property." This is not the law where the relation is purely landlord and tenant. There the duty is on the landlord. Code, § 61-111. And there the repairs really inure to the benefit of the landlord, while such may not be, and usually is not, the case where the estate created is one for years.

An estate for years passes an estate to the tenant and is treated as realty, whereas a tenancy does not do so. An estate for years is property. An ordinary tenant has no interest in the rented premises. The owner of an estate for years is liable for the taxes on the land, whereas a tenant is not, where there is a mere tenancy. A levy may be made on the interest of a tenant in an estate for years. So, it is the policy of the law to treat the tenant of any estate for years as the owner, during the life of such estate. See *Wilson Mfg. Co.* v. *Chamberlin-Johnson-DuBose Co.*, 140 *Ga.* 593 (79 S. E. 465). The interest of the tenant for years is an estate. Code, § 85-801.

The situation is analogous to that of a life tenancy. In fact,

as to a sixty-year estate for years, it may be reasonable to conclude that the case is stronger than a life estate. In *Hamilton* v. *Kinnebrew*, 161 *Ga*. 495 (131 S. E. 470), it was held that the life tenant was liable for substantial alterations required by the City of Rome in buildings on the premises. "If the surrounding circumstances and the terms of the lease taken together tend to show that it was the intention that the tenant should pay for the making of substantial alterations, the expense of alterations or improvements ordered by public authority should fall on the tenant." 33 A. L. R. 530, 531.

The tenant for years of an estate for sixty years is properly called the owner, dealt with as such, and considered the owner. See *Wilson Mfg. Co.* v. *Chamberlin-Johnson-DuBose Co.*, supra. The provisions of the Georgia Building Safety Law requiring the owner to make the structural changes required to meet the safety requirements are, under the facts in the present record, properly held to mean the owner of the estate for years, in absolute possession and having the rights and powers of the plaintiff here.

We might here call attention to the rights under the lease in question which the owner of the estate for years received:

"(1) It has possession and absolute control for sixty years. (2) The lease contains no restriction whatever upon the use of the property. (3) To make any alterations, additions, or improvements to the property which it desires without obtaining the consent of the defendant in error. (4) To demolish all buildings. (5) To sell or assign its estate without the consent of the defendant in error. (6) To mortgage its estate and issue bonds secured by such mortgage. (7) The defendant in error was not permitted to mortgage or encumber the fee title during the first ten years of the lease. (8) To sublet without the consent of the defendant in error. (9) To receive any residue of the proceeds of fire insurance after repairing or rebuilding."

The lease imposes the following duties on the estate for years:

"(1) To comply with all ordinances and laws relating to the demised premises and to indemnify the defendant in error from all costs and expenses on account thereof. (2) To repair, rebuild or restore the improvements on the demised premises in the event of loss or damage by fire. (3) To pay rent without

abatement in the event of damage or destruction by fire of any improvements upon the premises. (4) To make all necessary repairs to the buildings or improvements now or hereafter existing on the demised premises, and to keep them in good repair. (5) To pay all taxes upon the said property and on the improvements now or hereafter existing on the demised premises. (6) To pay all charges, assessments, liens, penalties and claims for damages against the property and to idemnify the defendant in error against them. (7) To insure the improvements on the premises against loss by fire. (8) To carry casualty insurance for the benefit of the owner of the estate for years and the owner of the fee title. (9) To return the premises at the end of the term in good condition and repair without any compensation for improvements. (10) To avoid committing any nuisance on the premises. (11) To erect new, modern fireproof buildings on the land costing not less than $750,000 on or before December 16, 1936."

We have called attention to these privileges and obligations of the owner of the estate for years in order that we might discuss the contentions of the plaintiff. We might state here that the demised premises involved here were described in the lease by metes and bounds without any reference whatsoever to any structures on the premises.

(b) The contract is somewhat lengthy and we can not here incorporate it in full. Counsel for the plaintiff in error call our attention to many cases from other jurisdictions which are apparently in conflict with what we here hold, but we think that the weight of authority is to the effect that the duty is placed upon the owner of the estate for years to make such structural changes and repairs as are here involved, when all the facts and circumstances show that the parties so intended by the lease. Counsel call our attention to 33 A. L. R. 530, 541. An examination of that annotation will reveal that the authorities are divided, and it is impossible to lay down a rule applicable to all cases. We must refer to the lease and the facts of each case before reaching a decision. This same authority, on pages 530 and 531, uses this language: "But if the surrounding circumstances and the terms of the lease taken together tend to show that it was the intention that the tenant should pay for the making of substan-

tial alterations, the expense of alterations or improvements ordered by public authority should fall on the tenant." Counsel for the plaintiff also call our attention to the cases of *Meyers* v. *Myrrell*, 57 *Ga.* 517; *Midtown Chain Hotels Co.* v. *Bender*, 77 *Ga. App.* 723 (49 S. E. 2d, 779) ; and *Kanes* v. *Koutras*, 203 *Ga.* 570 (47 S. E. 2d, 558). Upon reading the facts in those cases and the decisions of the courts, we think that it can be readily discerned that the facts are distinguishable from those in the instant case. We will not here go into any extensive effort to distinguish them, except to say that in the *Meyers* case the tenant's covenant was limited to repairs "for the safety or convenience of vessels lying at said wharf." We think that the court correctly held in that case that one can not be required to protect a river under a covenant to protect vessels lying at a wharf. We think that it was a requirement outside of those which the tenant covenanted to meet. The covenant in the instance case is not limited at all in its coverage. The lease in the *Meyers* case was for only three years—in the instant case for sixty years. In *Midtown Chain Hotels Co.* v. *Bender,* supra, this court said: "It would be more equitable and just to require of the landlord the making of substantial improvements which necessarily enhance the value of the property." In that case the lease could be canceled with two months' notice, in the event the property was sold by the lessor. The terms of the lease were for only five years. There are many other provisions in the lease in the *Midtown Chain Hotels Co.* case that do not appear in the lease in the instant case. In *Kanes* v. *Koutras,* supra, the terms of the lease involved were for only three years. The Supreme Court gave close consideration to the terms of the particular lease and the surrounding facts, and in effect held that it would be unequitable and a hardship to require the tenant, under the terms of the lease, to comply with the duty to be placed on him, and the court said: "Especially would this be true where the lease was for a short term and where the expenditures necessary to make the building conform to the ordinance would exceed the value of the building." So it will thus be seen that each case must stand on its particular facts and circumstances. The Supreme Court in that case did not undertake to lay down any rule of general application. A

reading of the full decision, we think, will so reveal. Our attention is also called to *Warehouse Inc.* v. *Wetherbee*, 203 *Ga.* 483 (46 S. E. 2d, 894). We find nothing in that case contrary to what we hold in the instant case. Counsel also cite *Trust Co. of Ga.* v. *Kenny*, 188 *Ga.* 243 (3 S. E. 2d, 553). We do not think that decision is applicable here.

Applying the foregoing rulings, it follows that the trial court did not err in sustaining the defendant's general demurrer and dismissing the petition as amended.

*Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur.*