32506. SHIPPEN *v.* GEORGIA BETTER FOODS INC. *et al.*

Decided July 16, 1949.   Rehearing denied July 29, 1949.

*John M. Slaton,* for plaintiff in error.

*Smith, Kilpatrick, Cody, Rogers & McClatchey,* contra.

GARDNER, J. (a) We think this a proper case for a declaratory judgment.

(b) The contract between the defendant as owner and the plaintiffs as subtenants (not following numerical order), among other things, provides: (1) The contract itself states that no relation other than that of landlord and tenant is created. (2) The lease carries a provision for a stipulated rental of $2000 per month and a percentage of the gross receipts. (3) The owner retained the ownership of furniture, carpets, and equipment with the right to remove certain parts thereof at any time she saw fit. (4) The owner reserved the right to have access to the books and records of the tenant. (5) The particular use to which the property could be put was limited to that of a hotel and apartment. (6) The owner remained obligated to pay taxes. (7) All furniture, fixtures and equipment placed on the premises by the tenant became the property of the owner. (8) In the event of bankruptcy or insolvency of the tenant, the lease was terminated, and the lease was not to become a part of the tenant's estate. (9) In the event of total destruction of the building by fire or other casualty, the lease was terminated. (10) In the case of partial destruction, the owner obligated herself to make the necessary repairs and restore the property to as good a condition as existed before such partial loss; and in the meantime the rent would abate in proportion to that part of the property which could be occupied. (11) The property could be mortgaged by the owner and the lease would be subservient to the mortgage. (12) The owner reserved for her own use the entire roof of the building, and in addition she

reserved the right to put a sign on the premises. (13) In the event the building was taken under eminent-domain proceedings, the lease would terminate. (14) The owner reserved certain space in the banquet room, basement, and workshop where the furniture, carpets, lamps, fittings, and repair parts were stored. (15) It was further provided that, in the event of default on the part of the tenant in the payment of rent and such default continued for a period of 30 days, or in the event the tenant refused to perform any obligation or covenant under the provisions of the contract, the owner had the option of canceling and terminating the lease and taking possession of the property. (16) Certain space in the basement occupied by a transformer belonging to the Georgia Power Company was excluded from the lease.

(c) Code § 85-805 provides: "A tenant for years is bound for all repairs or other expenses necessary for the preservation and protection of the property." This is the general rule as to responsibility of a tenant for years. Section 61-111 provides: "The landlord must keep the premises in repair and shall be liable for all substantial improvements placed upon them by his consent." This Code section expresses the general rule as to the obligation of the landlord where there is no tenancy for years. Unless there is some express provision in the lease contract, these general principles of law are applicable as between the parties. However, the lease contract in its entirety, and in view of the facts and circumstances concerning the situation, will be looked to in determining the intention of the parties to the contract. When we seek to view the intention of the parties to the lease contract here under consideration, we feel that we can reach no other conclusion than that the relation between the defendant and the plaintiffs was that of landlord and tenant respectively, notwithstanding the fact that the lease was for a term of twenty years. The parties so contracted in the lease. Besides, the owner or lessor imposed so many restrictions and reservations upon the tenant that, under all the facts and circumstances in view of these restrictions and reservations, it is not only lawful that the defendant be required to pay for these structural repairs, improvements and changes, but it would be inequitable and unjust not to require her to

bear them. As the trial court said in its opinion, the petition set forth that one of the requirements of the City of Atlanta was the construction and installation of an exit stairway to the roof. The defendant reserved the roof of the building for her exclusive use. Not only that, but she received as a rental $2000 per month and a percentage of the gross receipts. For the fiscal year ending May 31, 1947, she received, in excess of the stipulated monthly rental of $2000, the sum of $24,546.70. And for the fiscal year ending May 31, 1948, she received, in addition to the $2000 monthly rental, an excess rental of $35,-140.56. It is further alleged in the petition that the defendant expressed extreme satisfaction with the operation of the hotel.

(d) This court has had before it recently the cases of *Midtown Chain Hotels Co.* v. *Bender*, 77 *Ga. App.* 723 (49 S. E. 2d, 779), and *Evans Theatre Corp.* v. *DeGive Investment Co.*, 79 *Ga. App.* 62 (52 S. E. 2d, 655), and the Supreme Court had before it the case of *Kanes* v. *Koutras*, 203 *Ga.* 570 (47 S. E. 2d, 558). Counsel for both the plaintiffs and the defendant cite these cases in support of their respective contentions. We will not here engage in any lengthy discussion of these cases. We find nothing in them, under their facts as compared with the facts in this case, to convince us that the trial court erred in overruling the general demurrer in the instant case.

(e) Distinguished counsel for the defendant calls our attention to the provisions of Code § 61-111, supra, and cites many authorities as to the construction of the word "repair" as contained in that section. He cites *Chastain* v. *Reserve Loan &c. Co.*, 43 *Ga. App.* 91 (158 S. E. 448), which states in substance: A landlord is under no duty in absence of an express agreement to do so to repair a patent defect in the premises where its existence was known to the tenant at the time of the rental contract, and subsequent notice by tenant of the existence of such defect would not place upon the landlord any duty of inspection or repair. It is argued that the absence of structural changes was known to the tenant.. Counsel in this connection calls our attention to paragraph 5 of the lease, which reads as follows: "Lessee is to use the within premises for a hotel and apartment purposes, and at his own expense is to maintain the premises." He further calls our attention to

paragraph 14 of the lease, which reads in part as follows: "It is agreed that the leased premises are in a condition satisfactory for the purposes herein contemplated, and the same are accepted without warranty or representation as to their condition on the part of the lessor." Counsel calls our attention to the case of *Gavan v. Norcross*, 117 *Ga.* 356, 361 (43 S. E. 771), wherein the court stated that "The word 'repair' means to renew or to restore an existing thing—not to make a new one." In the sentence following that quoted above, the court said: "A covenant to repair ordinarily does not bind the landlord to rebuild, though there are cases in which the word 're-pair,' aided by the context, has been held to mean 'rebuild.' Where the contract requires the tenant to keep the premises in repair, and return them in the same condition as when received, or other language is employed showing an intention to make either party rebuild, such duty will be imposed, even though the word 'rebuild' is not used." This decision of the Supreme Court is a very interesting one, and we think by analogy illustrates the issue here—the issue as to whether the landlord or the tenant is to be liable under the lease contract here involved —"when we take the four corners of the lease," the expression of counsel for the defendant in his brief, and by its terms and the facts and circumstances concerning it endeavor to grasp the intention of the parties to the lease. It must be kept in mind that the structural repairs, improvements, and changes required by the city to keep the hotel operating were based on ordinances of the City of Atlanta enacted subsequently to the date of the execution of the lease. Of course, in many instances these ordinances require extensive structural changes and repairs or improvements, deemed necessary since the disastrous misfortune of the Winecoff Hotel fire. On this issue this court is of the opinion that the trial court expressed the law applicable here under the particular facts of this case. It said: "The defendant contends that under the fifth paragraph of the lease the lessee was obligated to make structural repairs by reason of the agreement that the lessee was under the duty of 'exercising diligence in fully observing all ordinances of the City of Atlanta, the laws of the State of Georgia, and laws of the United States.' The court is of the opinion that this pro-

vision does not include the enactment of future ordinances or resolutions which require structural changes or alterations having for its effect the enforcement of safety standards against fire."

Counsel, after having discussed the cases of *Kanes* v. *Koutras*, and *Midtown Chain Hotels Co.* v. *Bender*, supra, moves on to call our attention to and discuss certain other paragraphs of the lease, as follows: paragraph 7, with reference to changes in taxes or assessments increased on account of structural improvements made by the tenant and giving the tenant the discretion of making these improvements, structural or otherwise; and the provisions of paragraph 10, to the effect that the tenant in his discretion may make structural changes in the hotel or basement at his own expense, of fire-resistant material; and counsel calls our attention particularly to a provision in paragraph 10 which authorized the tenant to make changes in the hotel or apartment rooms at his pleasure, the owner having no power to control the changes in the hotel or apartment rooms except regarding the number of rooms. Counsel also refers to paragraph 11, to the effect that the provisions of that paragraph impose constant responsibility of the tenant to the owner even if the lease is assigned; and the provisions of paragraph 15, to the effect that the tenant is required to keep in good order and repair the elevators, motors, and other machinery; and the provisions of paragraph 16, to the effect that the tenant agrees to hold the lessor harmless to person or property because of the occupancy of the premises, whether the damage results from structural defects or otherwise; and to the provisions of paragraph 9, providing that the tenant can sell or exchange furniture at his pleasure and discard it if it is worn out, provided he gets as good or better to put on the premises. With these provisions of the lease specifically stressed, counsel for the defendant draws the conclusion that every intention and possible construction of the lease require therein that what is necessary to be done is to be the responsibility of the tenant. We cannot agree with this conclusion, though ever so ably and enthusiastically presented by distinguished counsel.

Counsel cites many foreign decisions, certain authorities of the appellate courts of this State, and various treatises of high

authority in support of his contentions. Included among the authorities relied upon, counsel calls our attention to Code § 20-702, that the "intention of parties must be sought"; and our attention is called also to Code § 20-703.

In the reply brief counsel for the defendant discusses at some length the case of *Evans Theatre Corp.* v. *DeGive Investment Co.*, supra. We have read with interest, and we feel with benefit, the many authorities cited by counsel for both parties in this case. It is our opinion that the court did not err in overruling the general demurrer to the petition. Therefore the judgment of the lower court is

  *Affirmed. MacIntyre, P. J., and Townsend, J., concur.*