## A01A0110. BAIRD v. KELLEY et al.
(551 SE2d 810)

POPE, Presiding Judge.

Landlords Jim Kelley, Harry Anderson, and Ira Levy brought a dispossessory action against Ken Baird d/b/a Cotton Block Exchange after Baird stopped paying rent. Baird countersued for breach of contract, unjust enrichment, and fraud. The dispossessory action became moot after Baird paid the amount of unpaid rent into court and agreed that it should be released to the landlords. The trial court subsequently granted the landlords' motion for summary judgment

---

as to Baird's counterclaim, and Baird appeals.

The lease signed by the parties specified that the property would be used for an antique retail warehouse and flea market. But a City of Rome building inspector visited the property before Baird opened for business and determined that the buildings did not comply with the applicable codes. The building had previously been used as a warehouse, and because Baird planned to use it as a retail business open to the public, the city required a number of changes to the property. Emergency exits and lighting were needed; additional off-street parking was required; and a handicap restroom and a sprinkler system would have to be installed. In February 1997, Baird wrote the landlords notifying them of the city's requirements and asking that his rent be abated until they could be met. The letter identified the sprinkler system as an item that Baird contended was the landlords' responsibility. Although Baird was able to hold outside flea markets on the property, he never utilized the interior of the building and eventually stopped paying rent.

1. Baird first contends that the trial court erred in granting summary judgment because the landlords breached the lease by failing to adequately perform an initial cleanup and repairs. Under the "Special Stipulations" portion of the lease, the landlords agreed to make: "the initial cleanup of the landscaping, replacement of broken window panes with on site panes and will have all necessary repairs completed to activate power and water to office and apartment. Landlord shall have the responsibility of the initial cleaning and painting of the apartment." Baird contends that they failed to clean up all the debris from the exterior of the property, failed to repair all broken windowpanes, and failed to properly repair all portions of the roof.

In reply, the landlords presented an affidavit with the general statement that they had performed the initial cleanup and repairs. They contend that the lease required Baird to provide them with written notice of any inadequacies in the cleanup, and without such notice, they argue that he cannot assert a claim of breach of contract. We disagree.

In signing the lease, the landlords acknowledged that they had the duty to perform an initial cleanup and certain repairs. Baird simply asserts that they failed to adequately perform that duty. The written notice requirement does not apply. Under that provision, Baird agreed to provide written notice to the landlords of "any defective condition known to him that [the landlords] were required to repair." The same provision gave the tenant "exclusive control of the premises" and relieved the landlords of the duty to periodically inspect the premises for needed repairs. Under a reasonable reading of the language, we find that this provision requires written notice

only of defective conditions of which the landlords may not have been aware by virtue of their turning control of the property over to the tenant.

In this instance, however, the landlords were clearly aware that an initial cleanup and repair were required, and they specifically contracted to perform that duty. No notice from the tenant was required to impose a duty that the landlords had already undertaken. Because there is a conflict in the evidence as to whether they adequately performed that duty, a jury issue exists as to whether the landlords breached the lease.[1]

2. Baird also argues that the landlords had the duty to provide premises that were suitable to the purpose of the lease and to make the improvements necessary to bring the building up to code. Specifically, Baird contends that the landlords had the duty to provide sufficient off-street parking and a sprinkler system, but concedes that he had the duty to install the handicap bathrooms, the fire doors, and the electrical system.

In a commercial lease such as this, the parties were free to contract as to their various responsibilities for repair, maintenance, and improvements. See *Sewell v. Royal*, 147 Ga. App. 88, 90-91 (1) (248 SE2d 165) (1978); *Colonial Self Storage &c. v. Concord Properties*, 147 Ga. App. 493, 495 (1) (249 SE2d 310) (1978); *Browning v. F. E. Fortenberry & Sons*, 131 Ga. App. 498, 500 (4) (206 SE2d 101) (1974). Accordingly, we must look to the lease contract in its entirety "in view of the facts and circumstances concerning the situation" to determine the parties' intent with regard to the repairs and improvements at issue. *Shippen v. Ga. Better Foods*, 79 Ga. App. 813, 819 (c) (54 SE2d 704) (1949). See also *Peachtree on Peachtree Investors v. Reed Drug Co.*, 251 Ga. 692, 695 (1) (308 SE2d 825) (1983) (construction of a contract governed by the intent of the parties as expressed in the entire contract); OCGA § 13-2-2 (4).

In signing the lease, Baird accepted the premises "for the purposes of this lease" as being in good condition and repair. And aside from the special stipulations for the initial cleanup and repairs, the landlords were not responsible for "any repairs or improvements of any sort whatever on said premises during the term of this contract," except maintenance of "the roof of the building, foundations, sills, floor joists and structural walls."

---

[1] We note that the parties did not argue and the trial court did not address whether issues of fact remain as to the damage element of Baird's breach of contract claim. See *Budget Rent-A-Car &c. v. Webb*, 220 Ga. App. 278, 279 (1) (469 SE2d 712) (1996) (" '[t]he elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken' "). Accordingly, we do not address that element.

For his part, Baird agreed that he would take good care of the premises and would make all necessary repairs to keep the building in good condition. He also agreed to pay for "[a]ny improvements, repairs, betterments or additions placed on the premises" by him with no charge to the landlords and agreed to comply with "all rules, orders, ordinances and regulations of the City, County and State in which the property is located."

The language of this lease, read as a whole, manifestly expresses the intent of the parties that the landlords' obligations would be limited to the specified areas of maintenance. And because Baird accepted the property as being in good condition for the purposes of the lease and agreed that he would be responsible for complying with the applicable city ordinances with no charge to the landlords for any improvements, he bore the responsibility of bringing the property in compliance with the requirements of the City of Rome. See *Sewell*, 147 Ga. App. at 90-91 (1); *Browning*, 131 Ga. App. at 500 (4). But see *Shippen*, 79 Ga. App. at 821-822 (agreement to abide by applicable ordinances does not make tenant liable for ordinances enacted after the lease signed).

The property had previously been used as storage space. There was no representation in the lease that the premises were suitable or fit for use as a retail antique mall and flea market. Compare *McDuffie v. Argroves*, 230 Ga. App. 723, 725 (2) (497 SE2d 5) (1998). Baird was aware of the condition of the property when he entered into the lease, yet he did not contract for any obligation on the part of the landlords to make the space suitable for use by the public as a retail space. To the contrary, he undertook those responsibilities himself. Therefore, the trial court correctly granted the landlords' motion for summary judgment on this ground.

3. Baird contends that the landlords had additional obligations because the leased property included a residential apartment. Because the lease covered what he terms a "mixed" residential and commercial property, Baird attempts to bootstrap a suitability requirement onto the property as a whole and asserts that the landlords could not contract away their obligation to provide premises suitable for Baird's needs.

But the intended purpose of the lease was for a commercial enterprise, and the lease provided that the property would not be used for any other designated purpose without the written consent of the landlords. Therefore, no residential use of the property was either contemplated or authorized by the lease. Nevertheless, Baird did rent out the apartment for a time. Accordingly, while Baird may have undertaken the obligations of a residential landlord, nothing in the lease indicates that the landlords undertook such obligations. Moreover, Baird has presented no evidence that the apartment itself

was in any way unsuitable for residential purposes. In fact, it apparently was used for that purpose. Therefore, no breach of the lease occurred with regard to that portion of the property. Accordingly, we find no error in the court's ruling on this ground.

*Judgment affirmed in part and reversed in part. Blackburn, C. J., and Mikell, J., concur.*

DECIDED JULY 5, 2001.

R. *Edward Furr, Jr.*, for appellant.
*Hine & Niedrach, John E. Niedrach, Christopher P. Twyman*, for appellees.